TODD KIM
Assistant Attorney General
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M Street, N.E.
Suite 4.149
Washington, D.C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| TETRA TECH EC, INC., | |
| Plaintiff, | Case No. 3:20-cv-08100-JD |
| v. | **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency; the DEPARTMENT OF THE NAVY; and CARLOS DEL TORO, in his official capacity as Secretary of the Navy, | Hearing: February 24, 2022 Time: 10:00 a.m. PDT Courtroom: Courtroom 11, San Francisco, 19th Floor |
| Defendants. | |

# TABLE OF CONTENTS

I.    ARGUMENT ..................................................................................................................1

A.  Plaintiff Has Not Demonstrated Standing..........................................................1

    1.   Future Potential Financial Detriment from the United States' False Claims Act and Breach of Contract Case Is Not Sufficient to Demonstrate Actual or Imminent Injury-In-Fact. ...........................................................2

    2.   Expenses for Voluntary Preparation of Comments on Drafts of the Work Plan are Not Fairly Traceable to the Challenged Conduct. .........................2

    3.   TtEC's Claimed Injury of Failure to Secure a Contract Renewal Does Not Flow from the Challenged Agency Action and Is Not Redressable in this APA Case................................................................................................4

    4.   None of TtEC's Alleged Interests are Within CERCLA's Zone of Interests. ............................................................................................5

B.  There is No Final Agency Action for the Court to Review. ...........................8

C.  CERCLA Section 113(h) Bars TtEC's Challenge. ....................................13

D.  The Court Should Dismiss the Complaint Without Leave to Amend. ......................15

II.   CONCLUSION.............................................................................................15

1

## TABLE OF AUTHORITIES

2

**Cases**

3550 Stevens Creek Assocs. v. Barclays Bank of Cal.,
   915 F.2d 1355 (9th Cir. 1990) ........................................................................................ 7

Alaska, Dep't of Env't Conservation v. EPA,
   244 F.3d 748 (9th Cir. 2001) ....................................................................................... 11

Aleck v. United States,
   No. CV 04-277, 2005 WL 2709502 (D. Or. Oct. 21, 2005) ...................................... 12

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) .................................................................................................. 4

Bennett v. Spear,
   520 U.S. 154 (1997) ........................................................................................... 6, 10, 12

Black v. LaHood,
   882 F. Supp. 2d 98 (D.D.C. 2012) ............................................................................ 3, 4

Carson Harbor Vill., Ltd. v. Unocal Corp.,
   270 F.3d 863 (9th Cir. 2001) ...................................................................................... 6, 7

Cherry v. FCC,
   641 F.3d 494 (D.C. Cir. 2011) .................................................................................... 3, 4

Chodos v. West Publ'g Co.,
   292 F.3d 992 (9th Cir. 2002) ....................................................................................... 15

City of Sausalito v. O'Neill,
   386 F.3d 1186 (9th Cir. 2004) ...................................................................................... 1

Clapper v. Amnesty Int'l USA,
   568 U.S. 398 (2013) ..................................................................................................... 2, 3

Clarke v. Sec. Indus. Ass'n,
   479 U.S. 388 (1987) ........................................................................................................ 6

Ctr. for Biological Diversity v. Bernhardt,
   No. CV 19-109-M-DLC, 2020 WL 7640045 (D. Mont. Dec. 23, 2020) ..................... 9

Ctr. for Biological Diversity v. Veneman,
   394 F.3d 1108 (9th Cir. 2005) ....................................................................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Deveraturda v. Globe Aviation Sec. Servs.*,
    454 F.3d 1043 (9th Cir.2006) .................................................................................. 15

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
    543 F.3d 586 (9th Cir. 2008) .................................................................................. 12

*Fort Ord Toxics Project, Inc. v. Cal. Env't. Prot. Agency*,
    189 F.3d 828 (9th Cir. 1999) .................................................................................. 13

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ................................................................................................ 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................................. 3, 5

*Fund for Animals v. Babbitt*,
    2 F. Supp. 2d 570 (D. Vt. 1997),
    *aff'd*, No. 97-6263, 1998 WL 352938 (2d Cir. May 18, 1998) ............................. 3, 4

*Indus. Customers of NW Utils. v. Bonneville Power Admin.*,
    408 F.3d 638 (9th Cir. 2005) .................................................................................. 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................. 5, 6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 1, 4

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ............................................................................................. 8, 9

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .................................................................................................. 6

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .................................................................................................... 8

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
    465 F.3d 977 (9th Cir. 2006) ............................................................................. 10, 11

*Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*,
    265 F.3d 1028 (9th Cir. 2001) ................................................................................ 12

*Pinal Creek Grp. v. Newmont Mining Corp.*,
    118 F.3d 1298 (9th Cir. 1997) .................................................................................. 6

*Pritikin v. Dep't of Energy,*
    254 F.3d 791 (9th Cir. 2001) ............................................................. 6

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ............................................................................ 4

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ..................................................................... 2, 4

*Ukiah Valley Med. Ctr. v. FTC,*
    911 F.2d 261 (9th Cir. 1990) ......................................................... 9, 11

*United States v. Students Challenging Regul. Agency Procs. (SCRAP),*
    412 U.S. 669 (1973) ......................................................................... 3

*United States v. W.R. Grace & Co.,*
    429 F.3d 1224 (9th Cir. 2005) ......................................................... 13

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas,*
    5 F.4th 997 (9th Cir.), *cert. denied,* 142 S. Ct. 713 (2021) ..................... 8

*WildEarth Guardians v. Chao,*
    454 F. Supp. 3d 944 (D. Mont. 2020) ................................................. 8

*Wild Fish Conservancy v. Jewell,*
    730 F.3d 791 (9th Cir. 2013) ............................................................. 8

**Statutes**

5 U.S.C. § 551(13) .................................................................... 8, 9, 10

5 U.S.C. § 702 ............................................................................ 5, 7, 8

5 U.S.C. § 704 ................................................................................ 8, 9

42 U.S.C. § 9601(23) ......................................................................... 14

42 U.S.C. §§ 9607(a)(1)-(4) ................................................................. 7

42 U.S.C. § 9613(h) .......................................................................... 13

**Code of Federal Regulations**

40 C.F.R. Part 300 ............................................................................ 14

40 C.F.R. § 300.415(d) ....................................................................... 14

48 C.F.R. §§ 33.103-5 .......................................................................... 5

Defendants, the United States Environmental Protection Agency ("EPA"), Michael S. Regan, in his official capacity as the Administrator of the EPA, the Department of the Navy, and Carlos Del Toro, in his official capacity as the Secretary of the Navy (collectively, "Federal Defendants"), file this reply in support of their motion to dismiss Plaintiff Tetra Tech EC, Inc.'s ("TtEC" or "Plaintiff") first amended complaint (Dkt. No. 51) ("Mot.").

# I.    ARGUMENT

## A.    Plaintiff Has Not Demonstrated Standing.

For Article III standing, TtEC's alleged injury must satisfy three "irreducible constitutional" requirements: (1) TtEC has suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] cognizable procedural injury exists for Article III purposes when, because of a failure to honor a statutorily required procedure, it is 'reasonably probable that the challenged action will threaten [a plaintiff's] concrete interests.'" *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (citation omitted).

TtEC alleges three injuries "caused by the Government's actions in developing and approving the Work Plan" that it believes "are redressable by the Court." Opp'n at 1. None of these satisfies each of the three requirements to establish standing. TtEC also alleges a "general . . . interest in the efficient and cost-effective cleanup of Hunters Point and the protection of public health and the environment . . . as a remediation contractor" and purportedly on behalf of its "local employees." Opp'n at 4. TtEC's purported general interest in site cleanup is insufficient even to support a procedural injury. Moreover, TtEC seems to take a mix-and-match approach in attempting to demonstrate standing. It is insufficient to, for example, allege an injury that could be considered concrete and particularized to meet the first standing element, then allege that another injury is fairly traceable, then that a different alleged injury is redressable, and another alleged interest is within the zone of interests. TtEC must identify an alleged injury that satisfies all of the standing requirements. It has failed to do so. Federal Defendants address each of TtEC's alleged injuries and explain why that injury fails to meet one

1    or more standing requirements.

2          1.    Future Potential Financial Detriment from the United States' False Claims
                  Act and Breach of Contract Case Is Not Sufficient to Demonstrate Actual
3                 or Imminent Injury-In-Fact.

4          TtEC continues to allege future financial injury from the United States' claims against

5    TtEC in the pending False Claims Act and breach of contract case in which the United States

6    seeks, *inter alia*, reimbursement of those additional costs as damages. Mot. at 4. The Supreme

7    Court has repeatedly explained that "threatened injury must be certainly impending to constitute

8    injury in fact," and that "[a]llegations of possible future injury" are not sufficient. *Clapper v.*

9    *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). As Federal Defendants explained in their motion,

10   Mot. at 8, the Court already found that TtEC's interest in eliminating or limiting its financial

11   exposure in the related litigation is not a cognizable injury-in-fact. *See* Transcript of Hearing and

12   Decision Dismissing TtEC Compl. ("Tr.") at 7:24-25 (explaining that "the Government is far

13   from a judgment in that case. So there's nothing imminent about it"). Thus, the mere potential

14   for an adverse judgment in the related case cannot satisfy the injury-in-fact requirement.

15         2.    Expenses for Voluntary Preparation of Comments on Drafts of the Work
                  Plan are Not Fairly Traceable to the Challenged Conduct.
16

17         To demonstrate standing, TtEC must show that a claimed injury is "fairly traceable to the

18   challenged action of the defendant." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

19   TtEC contends in its opposition that the challenged action is the "development and approval of a

20   work plan for Hunters Point Parcel G," i.e., the Parcel G Removal Site Evaluation Work Plan

21   ("Work Plan," Dkt. No. 21-1 (excerpts)), by the Navy and EPA. TtEC's Opp'n to Fed. Defs.'

22   Mot. to Dismiss at 1 (Dkt. No. 53, "Opp'n"). TtEC then alleges past financial injury from "the

23   time and resources TtEC spent to review and comment" on two drafts of the Work Plan. Opp'n

24   at 4. TtEC's alleged past financial injury fails the causation requirement for standing for two

25   reasons.

26         First, as the Federal Defendants explained in their motion, Mot. at 10-11, costs incurred

27   to prevent or mitigate future harm are not enough to confer standing where the harm plaintiff

28   seeks to avoid is itself speculative and not certainly impending. *Clapper*, 568 U.S. at 416. TtEC's

1   alleged expenditures are intended to prevent or mitigate the speculative and non-impending

2   future financial harm from a judgment against TtEC in the related United States' False Claims

3   Act and breach of contract case. The Court has already found that TtEC's potential financial

4   detriment from a potential adverse judgment in the related case lacks the imminence to constitute

5   an injury-in-fact. Tr. 7:23-25. Thus, under *Clapper*, 568 U.S. at 416, TtEC's voluntary incurring

6   of expenses to review drafts of the Work Plan (in an effort to minimize the cost of rework at

7   Parcel G) fails to demonstrate causation necessary for standing.

8           Second, to demonstrate causation, TtEC "must allege that [it] has been or will in fact be

9   perceptibly harmed *by the challenged agency action*." *United States v. Students Challenging*

10  *Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688 (1973) (emphasis added). That is, TtEC's

11  alleged harm must come from the challenged agency action. An alleged injury that pre-dates the

12  challenged agency action does not satisfy the causation element since the injury is not traceable

13  to the challenged action. *Black v. LaHood*, 882 F. Supp. 2d 98, 105 (D.D.C. 2012) (alleged

14  injury that "predated the actions challenged" fail the causation requirement); *Cf. Cherry v. FCC*,

15  641 F.3d 494, 498 (D.C. Cir. 2011) (holding that claimed injuries that occurred before, during,

16  and after alleged agency action cannot be fairly traced to the agency action) (citation omitted);

17  *Fund for Animals v. Babbitt*, 2 F. Supp. 2d 570, 575 (D. Vt. 1997), *aff'd*, No. 97-6263, 1998 WL

18  352938 (2d Cir. May 18, 1998) (finding conduct asserted to have caused plaintiffs alleged

19  injuries was unrelated to challenged alleged agency action). Thus, TtEC's allegation of past

20  financial injury voluntarily incurred by commenting on drafts of the Work Plan fails to

21  demonstrate causation and therefore is insufficient to support standing.

22          Lastly, even if TtEC's claimed costs for reviewing drafts of the Work Plan were an injury

23  that could be traced to the challenged action, such an injury is not redressable by the Court in this

24  action. The only relief available in this Administrative Procedure Act ("APA") suit is for the

25  Court to set aside the challenged action, which will have no effect on TtEC's past expenditures

26  of resources to comment on the draft Work Plans. Thus, TtEC fails to meet its burden of proving

27  that it is "likely, as opposed to merely speculative, that the injury will be redressed by a

28  favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

181 (2000).

3.  TtEC's Claimed Injury of Failure to Secure a Contract Renewal Does Not Flow from the Challenged Agency Action and Is Not Redressable in this APA Case.

TtEC also alleges past financial injury from "the Navy's failure to renew TtEC's radiological contract at Hunters Point in *March 2018* based on the procedurally flawed Work Plan, then under development." Opp'n at 4 (emphasis added); *see also* FAC ¶ 29. That is, TtEC alleges that the development of the Work Plan and not the challenged agency action— finalization of the Work Plan by the Navy and approval of the Work Plan by EPA—caused this alleged financial injury. TtEC fails to demonstrate that this alleged injury meets both the causation and redressability requirements of standing.

First, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant.'" *Defs. of Wildlife*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). TtEC alleges economic injury in the form of an unsuccessful attempt to have a contract for radiological work at Hunters Point renewed *before* the challenged Work Plan was issued in June 2019. It is axiomatic that alleged injury must flow *from* the impact of the challenged agency action and therefore, cannot occur *before* the alleged agency action. *See Black v. LaHood*, 882 F. Supp. 2d at 105; *Cherry v. FCC*, 641 F.3d at 498; *Fund for Animals v. Babbitt*, 2 F.Supp.2d at 575. Thus, this claimed injury cannot not be "fairly traceable to the *challenged action* of the defendant." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added); *Defs. of Wildlife*, 504 U.S. at 560–61.

Second, leaving that temporal deficiency aside, TtEC makes no attempt to connect the alleged lack of contract renewal with the Navy's finalization of the Work Plan. Indeed, TtEC alleges only that as the Navy was developing the Work Plan it did not renew a contract with TtEC for additional radiological work at Hunters Point, making no more than a conclusory allegation hinting at some connection between the two activities. Opp'n at 8-9; FAC ¶ 29. This allegation is plainly insufficient. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (explaining that the pleading requirement of Fed. R. Civ. P. 8(a) "demands more than an

1    unadorned, the-defendant-unlawfully-harmed-me accusation"). TtEC's first amended complaint

2    fails to provide any facts linking the final Work Plan and an unsuccessful contract bid. *See*

3    *Simon*, 426 U.S. at 44 ("[U]nadorned speculation [can] not suffice to invoke the federal judicial

4    power.").

5    Finally, TtEC's alleged past economic injury of failing to win another contract cannot be

6    redressed by this Court.[1] As noted above, the sole relief under the APA would be for the Court to

7    set aside the challenged decision, 5 U.S.C. § 702, which would have no effect on past contract

8    awards for radiological work at Hunters Point. Redress for unsuccessful bidders generally lies in

9    a bid protest to the contracting agency or officer, the Government Accountability Office, or

10   United States Court of Federal Claims, *see, e.g.*, 48 C.F.R. §§ 33.103-05 (within very limited

11   timeframes), but does not lie in this district court. TtEC fails to meet its burden of proving that it

12   is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

13   decision." *Friends of the Earth, Inc.*, 528 U.S. at 181. Thus, TtEC's alleged injury of not having

14   its contract renewed does not satisfy the causation or redressability elements of the standing

15   analysis.

16                    4.      None of TtEC's Alleged Interests are Within CERCLA's Zone of
                             Interests.

17

18   The APA provides that a "person suffering legal wrong because of agency action, or

19   adversely affected or aggrieved by agency action within the meaning of a relevant statute, is

20   entitled to judicial review thereof." 5 U.S.C. § 702. The Supreme Court has interpreted this

21   provision to impose a prudential standing requirement that the plaintiff's interests must fall

22   within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control*

23   *Components, Inc.*, 572 U.S. 118, 127 (2014) (citation omitted). Though the Supreme Court has

24

25   ─────────────────────

26   [1] TtEC suggests, without further explanation, that if the Federal Defendants are required to
     prepare a new Work Plan, "the Navy indeed may revisit its decision to not renew TtEC's

27   contract." Opp'n at 10. Though not a model of clarity, the Federal Defendants do not understand
     TtEC to be alleging that the Navy's failure renew TtEC's contract for work at Hunters Point is an

28   agency action being challenged in the APA suit (it could not be). If TtEC argues otherwise,
     Federal Defendants reserve the right to respond to such a spurious allegation.

explained that referring to this test as "prudential standing" is a misnomer in non-APA cases, the court must nonetheless determine whether a plaintiff comes within the "zone of interests . . . using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127-28. TtEC fails to demonstrate its interests are within the zone of interests protected by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA") provisions that TtEC relies upon in this suit. Although the zone of interest test "is not meant to be especially demanding," it does foreclose suit if the plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)).

"CERCLA was enacted to protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous waste sites." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir. 2001) (quoting *Pritikin v. Dep't of Energy*, 254 F.3d 791, 794-95 (9th Cir. 2001)). The Ninth Circuit has also identified two *secondary* purposes: "(1) to ensure the prompt and effective cleanup of waste disposal sites, and (2) to assure that parties responsible for hazardous substances bore the cost of remedying the conditions they created." *Carson Harbor Vill.,* 270 F.3d at 880 (quoting *Pinal Creek Grp. v. Newmont Mining Corp.*, 118 F.3d 1298, 1300 (9th Cir. 1997)). However, "[w]hether a plaintiff's interest is 'arguably . . . protected . . . by the statute' within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997). The zone of interests test[2] is "'a gloss on the meaning of [5 U.S.C] § 702,"

---

[2] Though case law refers to the zone of interests tests as a matter of "prudential standing," the Supreme Court has explained that is a misnomer in the context of the zone-of-interests analysis which asks the question of whether the plaintiff is within the class of persons authorized to sue under the substantive statute. *Lexmark Int'l,* 572 U.S. at 127.

1   *Clarke*, 479 U.S. at 395, which limits the universe of persons permitted to sue under the APA to

2   those "adversely affected or aggrieved by agency action within the meaning of a relevant

3   statute," 5 U.S.C. . 702.

4          At the end of the day, TtEC's interest in the Work Plan is limiting its financial exposure

5   to damages in the False Claims Act and breach of contract case. Opp'n at 11-12. In dismissing

6   the Initial Complaint, the Court recognized that TtEC's interest in the Work Plan boils down to

7   an interest "in not being identified as a responsible party under CERCLA," and thus found that

8   TtEC's alleged procedural violations in the Initial Complaint do not threaten its interest in the

9   Work Plan. Tr. 18:18-21. TtEC does not dispute that its interest is an "economic interest based

10  on past and future financial injuries." Opp'n at 11. Instead, TtEC tries to spin its interest as

11  consistent with CERCLA's second purpose–ensuring responsible parties pay. But that purpose is

12  accomplished by CERCLA authorizing "private parties to institute civil actions to recover the

13  costs involved in the cleanup of hazardous wastes from those responsible for their creation," not

14  by challenging the cleanup decisions during the course of a responsible party conducting a

15  CERCLA cleanup. *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357

16  (9th Cir. 1990) (citing 42 U.S.C. § 9607(a)(1)-(4)). TtEC's interest is clearly not within

17  CERCLA's primary purpose of "protect and preserve public health and the environment." *See*

18  *Carson Harbor Vill.,* 270 F.3d at 880.

19         Realizing its financial interests are insufficient, TtEC attempts to create a sufficient

20  interest alleging general interests in "expeditious and efficient cleanup of hazardous waste sites"

21  and "as a remediation contractor . . . at sites at which TtEC performed remediation services."

22  Opp'n at 11-12. TtEC is not an environmental non-governmental organization with a specified

23  interest in protecting public health and the environment. TtEC is instead a for-profit corporation

24  and subsidiary of TetraTech, Inc. that describes itself as a "consulting and engineering firm"

25  driven to provide service, value, excellence, and opportunity to its clients.[3] This assertion strains

26  credulity. Notably, TtEC fails to submit a declaration supporting these alleged generalized

27

28

___

[3] TetraTech, Our Company, https://www.tetratech.com/en/our-company.

1  interests. TtEC thus fails to establish that its interest are within the zone of interests protected by

2  CERCLA.

3       **B.      There is No Final Agency Action for the Court to Review.**

4       TtEC brings this challenge under APA section 702, which provides that a "person

5  suffering legal wrong because of *agency action*, or adversely affected or aggrieved by *agency*

6  *action* within the meaning of a relevant statute, is entitled to judicial review thereof."

7  5 U.S.C. § 702 (emphasis added). Judicial review is available under APA section 704 for "final

8  agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, to

9  establish a valid waiver of sovereign immunity and maintain a cause of action under the APA, a

10 plaintiff must challenge "agency action" that is "final." *Wild Fish Conservancy v. Jewell*, 730

11 F.3d 791, 800 (9th Cir. 2013) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62

12 (2004)). To be reviewable as an "agency action," the challenged act of the agency must be

13 "circumscribed" and "discrete." *Norton*, 542 U.S. at 62-63. That requirement derives from the

14 APA's definition of "agency action," which includes "the whole or a part of an agency rule,

15 order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* at 61

16 (citing 5 U.S.C. § 551(13)). All five specific examples given in this definition are "discrete" in

17 character, and only actions that share this "characteristic of discreteness" are reviewable under

18 the APA. *WildEarth Guardians v. Chao*, 454 F. Supp. 3d 944, 949 (D. Mont. 2020) ("The

19 Supreme Court cited the definitions of these categories to conclude that they "involve

20 circumscribed, discrete agency actions.") (citing *Norton*, 542 U.S. at 62-63).

21      "It is axiomatic that [a plaintiff] must identify an 'agency action' to obtain review under

22 the APA." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010 (9th

23 Cir.), *cert. denied*, 142 S. Ct. 713 (2021) (quoting *Norton*, 542 U.S. at 61-62). A plaintiff "must

24 direct its attack against some particular 'agency action' that causes it harm." *Lujan v. Nat'l*

25 *Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Though not entirely clear, TtEC contends in its

26 opposition that it challenges "development and approval of a work plan for Hunters Point Parcel

27 G," i.e., the Parcel G Removal Site Evaluation Work Plan ("Work Plan," Dkt. No. 21-1

28 (excerpts)), by the Navy and EPA. TtEC's Opp'n to Fed. Defs.' Mot. to Dismiss at 1 (Dkt. No.

1   53, "Opp'n").[4]

2       As an initial matter, while the Navy's finalization of the Work Plan and EPA's approval

3   of the Work Plan might be agency actions, the "*development* of the Work Plan," Opp'n at 1, 9

4   (emphasis added), is not an agency action. The amorphous concept of the "development" of an

5   agency action is not itself an "agency action" within the meaning of APA section 702,[5] let alone

6   a "final agency action" subject to review under section 704.[6] To the extent that TtEC challenges

7   "the development of the Work Plan," including the preparation of drafts of the Work Plan, rather

8   than the Navy's final Work Plan and EPA's approval of the Work Plan, that allegation must be

9   rejected because such is not an "agency action." *See, e.g., Ctr. for Biological Diversity v.*

10  *Veneman*, 394 F.3d 1108, 1113 (9th Cir. 2005) (holding that an attack on the "planning for the

11  use and development of water and related land resources" did not challenge a "discrete agency

12  action").

13      Moreover, even if the development of the Work Plan could somehow be found to be an

14  agency action, "not all agency action is reviewable." *Ctr. for Biological Diversity v. Bernhardt*,

15  509 F. Supp. 3d 1256, 1265 (D. Mont. 2020) (citing *Lujan*, 497 U.S. at 882). The APA limits the

16  district court's jurisdiction to review of agency actions that are either specifically authorized for

17  judicial review by statute or are "final agency actions." 5 U.S.C. § 704; *Lujan*, 497 U.S. at 882;

18  *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) ("finality is . . . a

19  jurisdictional requirement"). Under the Supreme Court's two-prong test, an agency action is final

20  when it: (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) "[is]

21  one by which rights or obligations have been determined, or from which legal consequences will

22  _____

23  [4] To the extent that Claim 5 is not directed at the Navy's finalization of the Work Plan and the
24  EPA's approval of Work Plan and could be construed as alleging that the Navy made a decision
    to modify the remedial goals in the ROD and improperly documented that decision (or that EPA
25  has made a decision to require the Navy to do so in a particular manner), the arguments set forth
    in this section apply to that possibly alleged agency action as well.
26  [5] The APA defines "agency action" to mean "the whole or a part of an agency rule, order,
    license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).
27  [6] TtEC seems to conflate what is a challenged agency action and what is an alleged procedural
    violation by the agency in consummating a decision by suggesting that the alleged procedural
28  violations are in themselves agency actions. Opp'n at 9.

flow." *Bennett*, 520 U.S. at 178; *see also Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("*ONDA*") (applying *Bennett* in assessing finality for purposes of judicial review). Both prongs of the test must be met.

Neither the Navy's finalization of the Work Plan, EPA's approval of the Work Plan, nor the Navy's execution of the investigatory work described in the Work Plan (or the development of the Work Plan) satisfy the second prong of *Bennett*. Contrary to TtEC's suggestion, Opp'n at 13-14, the fact that the Navy is moving forward with field work based on the Work Plan, including excavating and, if appropriate, removing contaminated soil—dubbed by TtEC as "boots on the ground"—does not satisfy the second prong of the test for finality in *Bennett* because the work does not establish TtEC's obligations or yield legal consequences. TtEC's reliance on the Ninth Circuit decision in *ONDA* is unavailing, *id.* at 13, as *ONDA* does not suggest that the Navy proceeding with site reinvestigation -- including re-excavating trenches potentially impacted by the data manipulation and falsification of records -- constitutes "the type of 'direct and immediate effect'" that satisfies the second *Bennett* prong. Indeed, the court's analysis in *ONDA* further demonstrates that TtEC's complaint must be dismissed.[7]

First, in *ONDA*, the Ninth Circuit explained that the "core question is whether the agency has completed its decisionmaking process, and *whether the result of that process is one that will directly affect the parties*." 465 F.3d at 982 (emphasis added and internal quotations omitted) (quoting *Indus. Customers of NW Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) and *Franklin v. Mass.*, 505 U.S. 788, 797 (1992)). An agency action may be final only if it has a "'direct and immediate . . . effect *on the day-to-day business' of the subject party*." 465

---

[7] TtEC's reliance on *ONDA* is further misplaced because *ONDA* highlights another deficiency in TtEC's allegations. The Ninth Circuit also considered "whether the disputed action could constitute 'agency action' under the APA as interpreted by [*Norton*, 542 U.S. at 62], because it is not a rule, order, license, sanction, or relief." 465 F.3d at 982-83 (internal parallel citations omitted). The APA defines "agency action" to mean "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). There, the court found that the challenged annual operating instructions issued to permittees that graze livestock on national forest land were licenses and thus, agency actions under the APA. 465 F.3d at 979, 982-83. However, here, TtEC has not demonstrated that any of the challenged decisions constitute "agency action" within the meaning of 5 U.S.C. § 551(13).

1  F.3d at 987 (emphasis added) (quoting *Ukiah Valley*, 911 F.2d at 264). TtEC is not directly

2  affected by or subject to either the Navy's or EPA's decisions to perform further investigatory

3  work. It is beyond dispute that neither the Navy finalizing the *Parcel G Removal Site Evaluation*

4  *Work Plan* ("*Work Plan*," excerpts Dkt. No. 21-1) nor EPA partially approving the *Work Plan*

5  has any direct or immediate effect on TtEC's day-to-day business.

6         Nor does the other case cited by TtEC, *Alaska, Department of Environmental*

7  *Conservation v. EPA*, 244 F.3d 748 (9th Cir. 2001) ("*ADEC*"), support TtEC's argument that the

8  initiation of field work somehow makes the Navy's and EPA's actions into final agency actions

9  under the APA. Opp'n at 17. In that case, a mining company, Cominco, applied to the Alaska

10  Department of Environmental Conservation ("ADEC") for an air quality permit to construct a

11  power generator. ADEC determined that the pollution control technology used with the generator

12  met state and federal air quality requirements and proposed to issue the permit, but EPA

13  disagreed and ordered ADEC not to issue the permit. EPA issued two other orders: one to ADEC

14  directing it not to issue the permit, one to Cominco prohibiting it from commencing construction

15  or modification activities related to the generator and one that allowed some summer

16  preconstruction activities to move forward. Cominco and ADEC sought review of these orders.

17  The Ninth Circuit made clear that *Bennett*'s second requirement could "be met through different

18  kinds of agency actions, not only one that alters an agency's legal regime." 465 F.3d at 987. The

19  court found both that (1) Cominco's "rights or obligations" had been determined by the orders

20  because the orders prohibited Cominco from constructing the generator and that (2) "legal

21  consequences will flow" from the orders because if Cominco proceeded with construction, EPA

22  could then ask the district court to impose penalties. *Id*. at 982. Thus, the court of appeals

23  determined that the second *Bennett* prong was met.

24         The present situation bears no relationship to that in *ADEC*. In *ADEC*, the court

25  addressed administrative orders directed at the regulated entity that prohibited that entity from

26  constructing a generator and subjected it to legal jeopardy if it failed to comply. Neither the

27  Navy's decision to move forward with the Work Plan nor EPA's approval of it directly impact

28  TtEC or impact TtEC's rights or obligations. TtEC is not required to take any action or forbear

1   from taking any action in response to the Work Plan. *Cf. Fairbanks N. Star Borough v. U.S.*

2   *Army Corps of Eng'rs*, 543 F.3d 586, 593 (9th Cir. 2008) (finding the second *Bennett* prong not

3   met where the rights and obligations of the entity remained unchanged by an agency action that

4   does not itself command the entity to do or forbear from doing anything). Similarly, the Navy's

5   issuance of the memorandum documenting the minor changes in the remedial action objectives

6   does not directly impact TtEC or require it to take or forebear from any action.

7        In a last ditch effort to address *Bennett*'s second prong, TtEC also argues that "legal

8   consequences flowed from EPA's approval of the Work Plan [because if] the Navy fails to

9   implement the approved Work Plan, it will be subject to the dispute resolution mechanisms

10  outlined in Section 12 of the Hunters Point [Federal Facilities Agreement ("FFA")]." Opp'n at

11  13.[8] First, to satisfy *Bennett's* second prong, legal consequences would need to flow from the

12  challenged action, not from some future hypothetical event. Second, the legal regime that the

13  Navy and EPA are subject to as it regards the Hunters Point cleanup was not altered by issuance

14  of the Work Plan. *See, e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine*

15  *Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) (finding the second part of the test met

16  because the action "alters the legal regime" and has direct and appreciable legal consequences);

17  *Aleck v. United States*, No. CV 04-277 AS, 2005 WL 2709502, at *4 (D. Or. Oct. 21, 2005)

18  ("The second prong is considered met if the action alters the legal regime to which the action

19  agency is subject.") (citing *Bennett*, 520 U.S. at 178). While the FFA sets forth certain legal

20  consequences, the action that created the legal regime and the potential consequences was

21  execution of the FFA, not issuance of the Work Plan. Dkt. No. 27-1, Ex. A (Federal Facilities

22  Agreement). Even assuming arguendo that the Navy's obligations under the FFA could be legal

23  consequences under *Bennett* prong two, those "consequences" would not be direct nor immediate

24  and would be entirely speculative, based on some hypothetical future failure of the Navy to act.

25  Thus, TtEC's final attempt to satisfy *Bennett*'s second prong also fails.

26

27  _____

28  [8] TtEC misstates the FFA's dispute resolution provision. Dispute resolution is not triggered by a
    hypothetical future failure of the Navy to complete the work set forth in the Work Plan.

1

**C.      CERCLA Section 113(h) Bars TtEC's Challenge.**

2      TtEC fails to rebut the United States' argument that CERCLA section 113(h), 42 U.S.C.

3   § 9613(h), deprives this Court of jurisdiction. Plaintiff's claims are barred challenges to the

4   Work Plan because Plaintiff asks this Court to interfere with the Navy's decision as to what

5   actions are needed to address the releases or threatened releases from the site. Further, the Work

6   Plan is a removal action and not subject to the very narrow exception to the bar created by the

7   Ninth Circuit in *Fort Ord Toxics Project, Inc. v. Cal. Envtl. Prot. Agency*, 189 F.3d 828 (9th Cir.

8   1999) (finding that CERCLA section 113(h) does not bar challenges to remedial actions

9   conducted under CERCLA section 120) ("*Ford Ord*").

10      TtEC asserts that "the entire Hunters Point cleanup is a remedial action undertaken

11   pursuant to CERCLA section 120." Opp'n at 14-15. TtEC is wrong. As the United States

12   explained in its motion (and which TtEC failed to respond to), the early work at Parcel G that

13   gave rise to this reinvestigation was conducted pursuant to the *Final Basewide Radiological*

14   *Removal Action Memorandum-Revision 2006* (Dkt. No. 21-2)–prepared by TtEC. Mot. at 8.

15   TtEC cannot escape that fact nor disavow its own characterization of the work now when it suits

16   its new narrative.

17      TtEC's characterization of the Work Plan as a remedial action rather than a removal

18   action ignores what it describes as the "broad context of the site cleanup." Opp'n at 15. The sole

19   need for this reinvestigation of Parcel G is the falsification and manipulation of data by TtEC's

20   employees and subcontractors while TtEC was conducting the Parcel G Time Critical Removal

21   Action. *See* Mot. at 3-4. *But for* the actions of TtEC's employees and subcontractors, the Navy

22   would not need to reinvestigate or issue the Work Plan. TtEC's suggestion that the timing of this

23   work, several years after TtEC's completion of the Time Critical Removal Action–timing

24   precipitated by TtEC–should work to its advantage and convert this work into a remedial action

25   is vexing. Moreover, the duration of preparation and fieldwork is not dispositive and other

26   circumstances can be considered in determining if an action is a remedial action. *See United*

27   *States v. W.R. Grace & Co.*, 429 F.3d 1224, 1244 (9th Cir. 2005) (explaining that an action was

28   not disqualified from being a removal action just because it took several years and where other

1    circumstances necessitated a longer period). Even if the Court were to find that the Work Plan is

2    not part of the prior removal action, nothing in CERCLA prevents the Navy from initiating a

3    new removal action at Hunters Point. Indeed, the Federal Facilities Agreement recognizes that

4    nothing in the agreement limits or changes the Navy's authority with respect to conducting

5    removal actions, and also provides a procedure for EPA to request that the Navy perform a

6    removal action at the site. Dkt. No. 27-1 at 29.

7         Contrary to TtEC's argument, the Work Plan need not address an "*imminent threat* to

8    human health or the environment," Opp'n at 16 (emphasis added), to be a removal action.

9    CERCLA does not define "removal" so narrowly. 42 U.S.C. § 9601(23). Indeed, TtEC

10   studiously avoids the mentioning the definition; instead, TtEC cherry picks aspects of certain

11   removal actions in asserting that the Work Plan is not a removal action. Opp'n at 14-16.

12   "Removal" means "the cleanup or removal of released hazardous substances from the

13   environment, such actions as may be necessary taken in the event of the threat of release of

14   hazardous substances into the environment, such actions as may be necessary to monitor, assess,

15   and evaluate the release or threat of release of hazardous substances, the disposal of removed

16   material, or the taking of such other actions as may be necessary to prevent, minimize, or

17   mitigate damage to the public health or welfare or to the environment, which may otherwise

18   result from a release or threat of release." *Id*. As is clear from the plain language of the statute,

19   "immediate risk" is not a required component of a CERCLA removal action. Thus, TtEC's

20   argument that the action at issue is not a removal because the Navy has advised the public that

21   there is no immediate risk to public health, Opp'n at 16-17, is not dispositive.

22        Further—and contrary to what TtEC appears to assert—a removal action may be

23   conducted in furtherance of the remedy to enhance the final outcome, and thus ultimately part of

24   the permanent solution. *Id.* at 14-15. The National Contingency Plan, 40 C.F.R. Part 300, which

25   sets guidelines for cleanup, expressly provides for removal actions that "shall, to the extent

26   practicable, contribute to the efficient performance of any anticipated long-term remedial action

27   with respect to the release concerned." 40 C.F.R. § 300.415(d). Removal actions are therefore

28   not temporally constrained in the manner that TtEC asserts.

1    Lastly, TtEC's reliance on the FFA to support its conclusion that the present action is a

2  remedial action is also misplaced. Opp'n at 15-16. The FFA expressly recognizes that the work,

3  both removal (including a remedial investigation and feasibility study) and remedial (e.g.,

4  remedial action), at Hunters Point is being conducted by the Navy, not EPA. EPA is overseeing

5  the work under its CERCLA section 120 authority. Dkt. No. 27-1 at 13-14. That the FFA

6  expressly acknowledges that the Navy may conduct removal actions does not undercut the

7  United States argument that the Work Plan is part and parcel of removal action undertaken

8  pursuant to CERCLA section 104. Though the United States disagrees with *Fort Ord* to the

9  extent that it finds CERCLA sections 104 and 120 to be separate and distinct grants of response

10  authority, *see* Mot. at 16 n.5, that does not change the nature of the work at Parcel G.

11    **D.    The Court Should Dismiss the Complaint Without Leave to Amend.**

12    Without explanation, TtEC offers that "[if] the Court rules TtEC's FAC is deficient in its

13  allegations or its prayer for relief, TtEC respectfully requests that the Court grant TtEC the

14  opportunity to amend its FAC." Opp'n at 20. After the Court dismissed the initial complaint for

15  failure to demonstrate standing, the Court allowed TtEC 60 days to amend its complaint. TtEC's

16  amended complaint presents very few new allegations and largely recycles the allegations that

17  the Court rejected. To the extent that TtEC has attempted to include allegations sufficient to

18  demonstrate standing, for the foregoing reasons, those allegations remain insufficient. Little else

19  was modified between TtEC's initial and amended complaint. TtEC has had sufficient

20  opportunity to make allegations that can withstand a motion to dismiss. TtEC has not shown that

21  it is anything but futile to allow it another opportunity to amend its complaint. *Deveraturda v.*

22  *Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049-50 (9th Cir.2006) (holding leave to amend

23  properly denied where amendment would be futile); *Chodos v. West Publ'g Co.*, 292 F.3d 992,

24  1003 (9th Cir. 2002) (same).

25  **II.    CONCLUSION**

26    For the foregoing reasons and those set forth in the Federal Defendants' motion, the

27  Court should grant the Federal Defendants' motion to dismiss.

28

Date: February 8, 2022

TODD KIM
Assistant Attorney General


 /s Leslie M. Hill
LESLIE M. HILL (D.C. Bar No. 476008)
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M Street, N.E.
Suite 4.149
Washington, D.C.  20002
Tel: (202) 514-0375
Email: Leslie.Hill@usdoj.gov

*Attorneys for Federal Defendants*


Of counsel:

Susan Johnson
Erin Miles
Office of General Counsel
U.S. Environmental Protection Agency

Brianna Fairbanks
Office of Regional Counsel, Region 9
U.S. Environmental Protection Agency

Richard Green
Greg Birkenstock
Cindy Hurt
Office of General Counsel - Naval Litigation Office
Department of the Navy
Washington, D.C.